UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHIRLEY JONES,

                Plaintiff,              No. 06-CV-13498-DT

vs.                                         Hon. Gerald E. Rosen

YUM BRANDS, INC.,

                Defendant.
_____/

OPINION AND ORDER REGARDING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

               At a session of said Court, held in
               the U.S. Courthouse, Detroit, Michigan
               on   April 4, 2008

               PRESENT:  Honorable Gerald E. Rosen
                                 United States District Judge

I. INTRODUCTION

This diversity negligence slip-and-fall action is presently before the Court on Defendant Yum Brands, Inc.'s Motion for Summary Judgment. Plaintiff has responded to Defendant's Motion and Defendant has replied. Having reviewed and considered the parties' briefs and supporting evidence, the Court has determined that oral argument is not necessary. Therefore, pursuant to Eastern District of Michigan Local Rule 7.1(e)(2), this matter will be decided on the briefs. This Opinion and Order sets forth the Court's ruling.

1

## II. PERTINENT FACTS

On February 10, 2006, Plaintiff Shirley Jones, her husband, Thomas, and their grandson, Nathan, were on their way home from the Mt. Holly ski resort at approximately 9:30 p.m. when they decided to stop to get something to eat at the Taco Bell restaurant located on South Linden Road in Flint, Michigan.[1] Mr. Jones stayed in the car while Plaintiff and Nathan went inside the restaurant. The entrance to the restaurant is through a door that opens into a walled-in, tiled-floor vestibule. Upon entering the vestibule a customer may either walk to the left and through another door into the dining area, or go to the right to walk down a corridor to the restrooms. Plaintiff testified that upon entering the vestibule she went immediately to the right to the restroom while Nathan entered the dining area.

After spending a few minutes in the restroom, Plaintiff walked back through the vestibule and entered the main dining room. She testified that neither upon entering the vestibule from outside nor upon re-entering it after using the restroom did she have any trouble navigating through the vestibule, nor did she notice any water or other liquid on the floor. Plaintiff then joined Nathan, who was already in line, and placed their food order. Plaintiff testified that she was in the main dining area for only approximately five minutes, as the family intended to just pick up their food and eat it in the car.

After getting their food, Nathan exited the restaurant into the vestibule, with

---

[1] Taco Bell is owned by Defendant Yum Brands, Inc.

Plaintiff following close behind. As Plaintiff was holding the door open for the person directly behind her, she slipped and fell on what was later determined to be a wet surface.

It had started to snow a short while earlier and there was no floor mat or rug in the vestibule. There also was no "wet floor" sign in the vestibule, although there was such a sign inside the restaurant near the food service counter. Evelyn Hammett, the senior assistant manager on duty the evening of February 10, 2006, testified that floors in the restaurant are regularly mopped for cleaning purposes and after they are mopped clean, a sign would be placed on the floor until it is dry. Brittany Vines, one of the Taco Bell food service employees working that evening testified that she observed Joy Lyn, who was working the front counter that evening, mop the dining room floors at least twice during her four-hour shift.

Taco Bell employees testified that they did not know how the water had come to be on the floor of the vestibule or how long it was there prior to Plaintiff's fall. It was the store's policy that the floors be mopped "as needed" when it was snowing. Jennifer Smith, the shift manager on duty the evening of February 10, 2006, testified that generally it is the responsibility of the front counter person to check the floors every half hour or so to see if they needed mopping for any reason. Defendant's employees could not recall specifically seeing anyone mopping the floor of the vestibule. The employees did testify, however, that no customers notified or complained to them about wet or slippery floors.

Jennifer Smith, the shift manager, testified that she had walked through the vestibule on her way to and from the restroom only twenty minutes before Plaintiff fell and the floor was not wet at that time. Evelyn Hamlett, the senior assistant manager, testified that she was called to the scene of Mrs. Jones's fall minutes after it happened. She stated that she saw some wet footprints on the floor but no puddles of water. She also testified that when she arrived in the vestibule area, Mrs. Jones was wearing open-backed, mule-type shoes ("the kind where you just slide your feet into, which are usually worn in the summer months") and one shoe was off.

Plaintiff claims that she did not see the liquid on the floor of the vestibule prior to her fall but she admits that she had not been looking at the ground, and that with Nathan walking in front of her, her view of the floor would have been obstructed anyway. Nathan also testified that he did not see any liquid on the floor until after his grandmother fell.

As a result of the fall, Plaintiff suffered a fractured hip and injuries to her knee and back. She subsequently filed this negligence action against suing Yum Brands, the corporate owner of Taco Bell. Discovery has closed and Defendant has moved for summary judgment.

A. <u>STANDARDS APPLICABLE TO MOTIONS FOR SUMMARY JUDGMENT</u>

Summary judgment is proper "'if the pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to

judgment as a matter of law.'" Fed. R. Civ. P. 56(c).

Three 1986 Supreme Court cases -- *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); and *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) -- ushered in a "new era" in the standards of review for a summary judgment motion. These cases, in the aggregate, lowered the movant's burden on a summary judgment motion.[2] According to the *Celotex* Court,

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof.

*Celotex*, 477 U.S. at 322.

After reviewing the above trilogy, the Sixth Circuit established a series of principles to be applied to motions for summary judgment. They are summarized as follows:

> * The movant must meet the initial burden of showing "the absence of a genuine issue of material fact" as to an essential element of the non-movant's case. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.

> * The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative evidence in order

---

[2]"Taken together the three cases signal to the lower courts that summary judgment can be relied upon more so than in the past to weed out frivolous lawsuits and avoid wasteful trials." 10A C. Wright, A. Miller, M. Kane, Federal Practice & Procedure, § 2727, at 35 (1996 Supp.).

5

to defeat a properly supported motion for summary judgment."

* The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

* The trial court has more discretion than in the "old era" in evaluating the respondent's evidence. The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is plausible.

*Betkerur v. Aultman Hospital Association*, 78 F.3d 1079, 1087 (6th Cir. 1996). *See also, Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989). The Court will apply the foregoing standards in deciding Defendant's motion for summary judgment in this case.

B.   PLAINTIFF HAS FAILED TO MAKE OUT A *PRIMA FACIE* CASE OF NEGLIGENCE

It is well settled that in order to make out a *prima facie* case of negligence, a plaintiff must prove each of the following four elements: (1) that the defendant owed a duty to the plaintiff; (2) that the defendant breached that duty; (3) that the defendant's breach of duty was the proximate cause of the plaintiff's injuries; and (4) that the plaintiff suffered damages as a result. *See Schultz v. Consumers Power Co.*, 443 Mich. 445, 449, 506 N.W.2d 175 (1993); *Krass v. Tri-County Sec., Inc.*, 233 Mich. App. 662, 667-78, 593 N.W.2d 578 (1999).

In order to assert negligence, a plaintiff must first establish the existence of a duty owed by the defendant to the plaintiff. *Jackson v. Oliver* 204 Mich. App. 122, 125, 514

N.W.2d 195 (1994). Whether a defendant owes a duty to a plaintiff to avoid negligent conduct in a particular circumstance is a question of law for the court to decide. *Schmidt v. Young*, 215 Mich. App. 222, 224; 544 N.W.2d 743 (1996). To determine whether the defendant owed the plaintiff a duty, courts examine a number of factors, including the relationship of the parties and the foreseeability and nature of the risk. *Schultz, supra* at 450. *See also, Kelly v. Caswell & Co.*, 883 F. Supp. 189, 193 (E.D. Mich. 1995), citing *Moning v. Alfono*, 400 Mich. 425, 438-39, 254 N.W.2d 759 (1977) ("Duty is essentially a question of whether a relationship between an actor and an injured person gives rise to any legal obligation on the actor's part for the benefit of the injured person.") It is fundamental, then, that when there is no legal duty, there can be no actionable negligence. *Munson v. Vane-Stecker Co.*, 347 Mich. 377, 392, 79 N.W.2d 855 (1956).

In Michigan, the duty owed by a possessor of land is dependent upon the status of the plaintiff as an invitee, a licensee, or a trespasser at the time of the injury. *Stanley v. Town Square Co-Op*, 203 Mich. App. 143, 147, 512 N.W.2d 51 (1993). Invitees are divided into two categories -- public invitees and business invitees. *Stitt v. Holland Abundant Life Fellowship*, 462 Mich. 591, 593, 614 N.W.2d 88 (2000). A public invitee is a person who is invited to enter or remain on land as a member of the public for a purpose for which the land is open to the public. *Id.* A business invitee is a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land. *Id.*

There is no dispute in this case that Plaintiff was a "business invitee" at the time of

7

her fall as she was lawfully on Defendant's premises for the purpose of purchasing food. However, a store owner is not an absolute insurer of the safety of invitees, *Williams v. Cunningham Drug Stores, Inc.*, 429 Mich. 495, 500, 418 N.W.2d 381 (1988); *Anderson v. Wiegand*, 223 Mich. App. 549, 567 N.W.2d 452 (1997), and the mere existence of a defect or danger on the owner's premises is not enough to establish liability. *Kroll v. Katz*, 374 Mich. 364, 132 N.W.2d 27 (1965).

A store owner is only liable for injury resulting from an unsafe condition if (1) that condition is caused by the active negligence of the store owner or its employees, or (2) the condition is of such a nature or has existed for such a length of time, that the store owner or a store employee knew or should have known that the unsafe condition existed. *Clark v. Kmart Corp.*, 465 Mich. 416, 419, 634 N.W.2d 347 (2001); *Whitmore v. Sears, Roebuck & Co.*, 89 Mich. App. 3 7, 279 N.W. 2d 318 (1979). In other words, a premises owner must have either created the dangerous condition or had actual or constructive notice of the existence of the condition. *Derbabian v. S & C Snowplowing, Inc.*, 249 Mich. App. 695, 644 N.W.2d 779 (2002). It is well-settled that the burden is upon the plaintiff to establish facts demonstrating that the defendant property owner had such actual or constructive notice. *Snyder v. City of Albion*, 113 Mich. 275, 280, 71 N.W. 475, 476 (1897); *Pete v. Iron County*, 192 Mich. App. 687, 689, 481 N.W.2d 731, 732 (1992).

In this case, Plaintiff does not contend that it was one of the Taco Bell employees who placed the water on the floor of the vestibule. Nor has she presented any evidence that any Taco Bell employee was actually aware of the water. Rather, her argument is

8

wholly one of "constructive knowledge."

In order to show constructive knowledge, the plaintiff must present evidence that prior to the fall, the substance on which she slipped was on the floor for a sufficient period of time to lead to the conclusion that the defendant should have discovered it. *Suci v. Mirsky*, 61 Mich. App. 398, 402, 232 N.W.2d 415, 417 (1975); *Whitmore v. Sears, Roebuck & Co.*, 89 Mich. App. 3, 8-10, 279 N.W.2d 318, 321-22 (1979). The burden is upon the plaintiff to present such *prima facie* evidence of constructive knowledge. *Pete v. Iron County*, 192 Mich. App. 687, 689, 481 N.W.2d 731, 732 (1992). "Where there is no evidence to show that the condition existed for a considerable time, a directed verdict in favor or the storekeeper is proper."*Whitmore v. Sears, Roebuck & Co., supra*, 89 Mich. App. at 8.

Plaintiff here admitted in her deposition that upon entering the restaurant from the parking lot, she walked through the vestibule without a problem and did not notice any water on the floor at that time. [Plaintiff's Dep., pp. 67-68.] She further testified that she was in the restaurant for a total of approximately five minutes or so before her fall. [Plaintiff's Dep., p. 67.] She further acknowledged that she could have had snow on her shoes that she might have tracked into the vestibule herself as it was snowing and there was snow on the ground when she entered the building. *Id.* at 58-60. The assistant store manager testified from her personal observation that when she walked through the vestibule 20 minutes before Plaintiff fell the floor was not wet. [*See* Smith Dep., pp. 28-29.]

The rule as to the length of time that a given condition must obtain in order to charge a storekeeper with constructive knowledge varies with the facts and circumstances involved. *Toma v. Montgomery Ward & Co.*, 336 Mich. 468, 486, 58 N.W.2d 149 (1953). However, some parameters are discernable from recent cases. For example, in *Clark v. Kmart Corp.*, 465 Mich. 416, 634 N.W.2d 347 (2001), the Michigan Supreme Court held that evidence that a dangerous condition existed for an hour was sufficient time to charge a store owner with constructive knowledge of the condition.

In *Clark*, the plaintiff slipped on some loose grapes that were on the floor in a closed check-out lane in a Kmart store. A Kmart employee testified that the register in that check-out lane would have been closed no later than 2:30 a.m., about an hour before the plaintiff arrived. 465 Mich. at 420. The Michigan Supreme Court determined that a jury could reasonably infer that the loose grapes were, more likely than not, dropped when a customer brought grapes to the check-out lane to buy them while it was still open. *Id.* The court further determined that from this, the jury could infer that an employee of defendant should have noticed the grapes at some point before or during the closing of the lane and either cleaned them up, or asked another employee to do so. "Further, the fact that the check-out lane had been closed for about an hour before plaintiff fell establishes a sufficient length of time that the jury could infer that defendant should have discovered and rectified the condition." *Id.*

However, when the length of time established is considerably less than an hour, courts have routinely found for the defendant. In *Schmitter v. Charter One Financial,*

*Inc.*, 2004 WL 385365 (Mich. App. 2004), the Michigan Court of Appeals affirmed the trial court's grant of summary disposition to the defendant where the evidence showed that, at most, the length of time a puddle of water caused by partially melting snow tracked into the bank's entrance could have existed was 15 minutes.[3] The court held that this length of time was insufficient time to put the defendant on notice of the condition.

Similarly, in *Spencer v. Kessel Food Markets*, 2002 WL 1065623 (Mich. App. 2002), the Court of Appeals reversed a jury verdict awarding the plaintiff who had slipped on a banana in the defendant's store $320,077.31 and ordered the case remanded to the trial court for entry of judgment in favor of the defendant where the evidence showed that ten minutes before the plaintiff's accident there was nothing on the floor where the plaintiff fell. The court found that the evidence presented at trial showed at best that the banana had been dropped on the floor by one of two boys seen grabbing fruit as they ran through the produce department "only moments before the accident," and this, the court held, was an insufficient amount of time to charge the store owner with constructive knowledge.

Likewise, in *Slappey v. Kroger Co.*, 850 F.2d 692, 1988 WL 68567 (6th Cir. 1988) (applying Michigan law), the court held that the one to two minutes that the plaintiff had been shopping in the dairy aisle before her fall was "insufficient as a matter

---

[3] The court concluded that 15 minutes was the maximum amount of time the water could have been standing based on the facts that the bank had opened for business at 9:30 a.m. and the plaintiff's deposit slip showed that he completed his deposit transaction at 9:40 a.m. He slipped and fell exiting the bank.

11

of law to be the foundation of actual or constructive notice of a spill on the floor." *Id.* at *1.[4]

In this case, the evidence shows that the floor of the vestibule was dry 20 minutes before Plaintiff fell. Plaintiff herself testified that she did not see any water on the floor when she entered the vestibule from the parking lot. This was a little more than five minutes before she fell. Plaintiff has presented no evidence that there was water on the floor of the vestibule before that time.[5] At best, the evidence might support an inference that water was on the floor for only a little more than five minutes -- from the time Plaintiff entered the restaurant until the time when she and her grandson left with their food. Under the foregoing authorities, five minutes is an insufficient amount of time to

---

[4] Courts of neighboring states have held likewise. In *Buser v. Cut Rate Super Market No. 1*, 334 S.W.2d 738 (Tenn. App. 1960), the court held that evidence that a dangerous condition had existed for four to five minutes before the plaintiff's accident was insufficient to establish constructive notice and to impose liability on the store owner. And, in *Gargaro v. Kroger Grocery & Bakery Co.*, 118 S.W.2d 561 (Tenn App. 1938), evidence that the defect had existed for close to thirty minutes was not considered sufficient evidence to permit the jury to decide the issue of negligence.

[5] In this context, this case is factually similar to *Guthre v. Lowe's Home Centers, Inc.*, 204 Fed. Appx. 524 (6th Cir. 2006). In *Guthre*, the plaintiff who slipped and fell on some loose sand on the floor near the checkout counter of a home improvement store, argued that the store was liable for her injuries based on a "constructive notice" theory. In affirming this Court's grant of the defendant's motion for summary judgment, the Sixth Circuit found that the plaintiff's evidence concerning the length of time the sand had been on the floor to be pure speculation. There was no evidence to show whether the loose sand had been on the floor all day or for merely five seconds. Therefore, the appellate court concluded that Guthre had presented insufficient evidence to give rise to a reasonable temporal inference that the sand had been on the floor for a significant period of time so as to charge the defendant with constructive knowledge.

charge Defendant with constructive notice of the condition.

Plaintiff's theory appears to be that because it was snowing on the day in question, Defendant should automatically have been put on notice of a potentially dangerous condition being created by melting snow on the floor of the vestibule regardless of how long the water may have been on the floor. However, this is simply not the law. In fact, Michigan courts have determined that water in a store entryway in winter in Michigan constitutes an "open and obvious danger," and hence, the store owner owes no duty whatsoever to business invitees to protect or warn. *See e.g., Sharp v. Art Van Furniture, Inc.*, 2006 WL 2270390 (Mich. App. 2006). The *Sharp* case is actually factually substantially similar to the instant action.

The plaintiff in *Sharp* slipped and fell inside the glass-walled entryway of an Art Van Furniture Store. It was a wintry January day and the ground outside the store was covered with slush. Sharp testified that as he approached and entered the store, he was not looking for water that would have been tracked into the store that morning by others, and because he had not been looking down, he did not see any water until he slipped and fell. Sharp argued that accumulated water on the floor of an entryway posed an unreasonably dangerous condition that Art Van should have noticed as other customer entered the store tracking water and slush on their feet. Art Van moved for, and was granted, summary disposition on Sharp's complaint. The Michigan Court of Appeals affirmed, and in so doing, explained:

> Water in a store entryway on a slushy January day in Michigan is a hazard analogous to that presented by ice and snow. Generally, absent special circumstances or a statutory duty, the hazards presented by ice and snow are open and obvious, and do not impose a duty on the property owner to warn of or remove the hazard.[6] Reasonable minds could not disagree that a slippery surface on a store entryway should be expected under these conditions. Even assuming there was a large amount of water on the floor, an average person of ordinary intelligence would be on notice of the possibility of water accumulation, or possible the presence of water on his own shoes that could pose a risk of slipping.

*Id.* at * 2. *See also Blakely v. Sears, Roebuck & Co.*, 2006 WL 2604683 (E.D. Mich. 2006).

For all of the foregoing reasons, the Court finds that Plaintiff has failed to make out a claim a *prima facie* claim of negligence against the Defendant. Plaintiff has not shown that Defendant owed her a duty to protect her from, or warn her of, the condition of the wet floor in the vestibule of the Linden Road Taco Bell. As the court observed in *Sharp v. Art Van Furniture*, *supra*, "[W]et store entryways during the winter are a common everyday occurrence in Michigan, and 'everyday occurrences' are not generally dangerous conditions that pose an unreasonable risk of harm."

## CONCLUSION

For all of the reasons stated above in this Opinion and Order,

IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment is GRANTED. Accordingly,

---

[6] *Benton v. Dart Properties, Inc.,* 270 Mich. App. 437, 443 n.2, 715 N.W.2d 335 (1988); *Corey v. Davenport College of Business (On Remand),* 251 Mich. App. 1, 4-5, 8, 649 N.W.2d 392 (2002).

IT IS FURTHER ORDERED that Plaintiff's Complaint be, and hereby is, DISMISSED in its entirety, with prejudice.

s/Gerald E. Rosen
Gerald E. Rosen
United States District Judge

Dated: April 4, 2008

I hereby certify that a copy of the foregoing document was served upon counsel of record on April 4, 2008, by electronic and/or ordinary mail.

s/LaShawn R. Saulsberry
Case Manager